UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHNNY RAY CHANDLER, SR., | ) |
| | ) |
| | ) |
| **Plaintiff,** | ) |
| **v.** | ) |
| | ) **Civil Action No. 06-0664 (PLF)** |
| | ) **(ECF)** |
| ANTHONY WILLIAMS, et al., | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

**FEDERAL DEFENDANTS' MOTION TO DISMISS OR
IN THE ALTERNATIVE FOR SUMMARY JUDGMENT**

Pursuant to Fed. R. Civ. P. 12(b)(1), (b)(5) and (b)(6) or in the alternative Fed. R. Civ. P.

56, Federal Defendants, the United States of America,[1] the United States Parole Commission

("USPC" or the "Commission"), and Court Services and Offender Supervision Agency

("CSOSA"), move to dismiss Plaintiff's Complaint (*see* USDC Pacer Doc. Nos. 1 (Complaint),

as well as 4, 7, and 18 (motions to amend complaint)),[2] because the Court lacks subject matter

jurisdiction over Plaintiff's tort claims and Plaintiff fails to state a claim for which relief may be

granted for his remaining allegations.  Furthermore, Plaintiff has failed to perfect service on

---

[1]  The United States has already been substituted for CSOSA employees, Messrs. James and
Williams.  *See* USDC Pacer, Doc. No. 1, Exh. B, Contreras *Westfall* Certification.  In his
motions to amend his Complaint, Plaintiff attempts to add the following CSOSA employees as
defendants in this matter, as well:  Matthew Keily, Gregory Campos and Danielle Johnson.  *See*
Doc. Nos.  7 and 18.  Attached hereto is a second *Westfall* Certification, to effectuate the
substitution of the United States for Messrs. Kiely and Campos and Ms. Johnson.  *See* Exh. 1,
Contreras Second *Westfall* Certification.

[2]  On December 15, 2006, the Court ordered Defendants to answer or otherwise respond to
Plaintiff's Complaint and pending motions to amend or correct the Complaint [Doc. Nos. 4, 7, 18
and 24].  The instant motion addresses document numbers 1, 4, 7 and 18.  A motion to extend
time to respond to document number 24, in which Plaintiff attempts to add Mr. Paul Quander, Jr.
as a defendant, has been filed on this date.

Federal Defendants.  In support of this Motion, the Court is respectfully referred to the accompanying memorandum of points and authorities and Mr. Contreras' *Westfall* certification.

Plaintiff, who is proceeding *pro se*, should take notice that any factual assertions contained in the attached Memorandum in Support of this Motion and supporting exhibits will be accepted by the Court as true unless the Plaintiff submits his own affidavit or other documentary evidence contradicting the assertions therein.  *See Neal v. Kelly*, 963 F.2d 453 (D.C. Cir. 1992).

Furthermore, should this Court treat the Defendants' motion as one for summary judgment because of the document attached, the Federal Rules of Civil Procedure provide:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.  Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith.  The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits.  When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e).  *See Fox v. Strickland*, 837 F.2d 507 (D.C. Cir. 1988) ("*pro se* party may lose if he fails to respond to a dispositive motion); Local Rule 56.1 ("the court may assume that facts identified by the moving party in its statement of facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion.").

Respectfully submitted,


_____/s/_____
Jeffrey A. Taylor (D.C. Bar # 498610)
United States Attorney


_____/s/_____
Rudolph Contreras (D.C. Bar # 434122)
Assistant United States Attorney


_____/s/_____
Mercedeh Momeni
Assistant United States Attorney
Civil Division
555 4th Street, N.W.
Washington, D.C. 20530
(202) 305-4851

*OF COUNSEL:*
Stephen Arthur Bailey, Esq.
CSOSA, General Counsel's Office
633 Indiana Avenue, NW
Washington, DC 20004

And

Pamela Roberts, Esq.
U.S. Parole Commission
5550 Friendship Boulevard
Chavy Chase MD, 20815

Dated:  February 20, 2007

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JOHNNY RAY CHANDLER, SR., | ) |
| | ) |
| | ) |
| **Plaintiff,** | ) |
| **v.** | ) |
| | ) **Civil Action No. 06-0664 (PLF)** |
| | ) **(ECF)** |
| ANTHONY WILLIAMS, et al., | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

**FEDERAL DEFENDANTS' STATEMENT OF MATERIAL FACTS NOT**
**IN GENUINE DISPUTE IN SUPPORT OF THEIR MOTION TO DISMISS**
**OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT**

Pursuant to Fed. R. Civ. P. 56 and LCvR 7(h) Federal Defendants submit the following

Statement of Material Facts Not in Dispute.

1.      Plaintiff, Johnny Ray Chandler, Sr. was convicted in the Superior Court of the District of

Columbia, and sentenced on August 1, 1991, to a term of 10-30 months for the offense of

attempted robbery.  *See* Exh. 2, D.C. Superior Court Judgment and Commitment Orders.  In

addition, plaintiff was sentenced on October 22, 1991, to consecutive terms of 10-30 months for

attempted robbery and 7-21 years for armed robbery, robbery, and assault with a dangerous

weapon.  *Id.  See also*, Compl., Doc. No. 1.

2.      Plaintiff was released on parole on June 5, 2005, and was to remain under parole

supervision until the full term date of his sentence on November 5, 2016.  *See* Exh. 3, Certificate

of Parole.  The parole certificate explained that Plaintiff would be subject to certain conditions

for the duration of his parole including the special mental health aftercare condition.  *Id.*

3.      In June and July 2005, Plaintiff's then Community Supervision Officer ("CSO"), Charles

James, received information from Plaintiff's former female attorney, based in northern Virginia,

and a female prison case manager in Georgia, who indicated that they were concerned for their

safety due to the disturbing nature of the communications that they had received from Plaintiff.

*See* Exh. 4, 10/13/05 Report of Alleged Violation(s) (filed under seal).  Based on the foregoing,

as well as Plaintiff's criminal history and other information, CSO James requested that a

psychological risk assessment be performed to gauge the possibility of Plaintiff committing a sex

offense.  CSO James reported to USPC that pending the outcome of the assessment, Plaintiff was

placed under CSOSA's Global Positioning System ("GPS") monitoring.[3]  *See* Exh. 4.  *See also*,

Compl., Doc. No. 1.

4.      Subsequently, Dr. Phyllis Brodie of the Center for Clinical and Forensic Services Inc.

("CCFS"), conducted an assessment and concluded that Plaintiff was a high risk for perpetrating

sexual violence.  *See* Exh. 5, 8/12/05 CCFS/Brodie Psychosexual Assessment (submitted for in

camera inspection only).

5.      Dr. Brodie recommended that Plaintiff be transferred to the Sex Offender Unit for

appropriate supervision.  *See* Exh. 5 at 7.

6.      The Commission, by a Notice of Action dated January 18, 2006, imposed the Special Sex

Offender Aftercare Condition, including GPS monitoring, pursuant to 28 C.F.R. Section 2.85.

*See* Exh. 6, 1/18/06 USPC Notice of Action.  Plaintiff was then transferred for supervision by the

Sex Offender Unit, to be supervised by CSO Campos.

6.      On or about April 19, 2006, CSO Campos telephoned Plaintiff to instruct him to report to

the CSOSA office before 4:30 p.m. because Plaintiff had missed his drug testing appointment the

previous day.  *See* Exh. 8, Campos Declaration.  Plaintiff informed CSO Campos that afternoon

that his new job would not permit him to keep future appointments with his CSO, due to the long

---

[3]  CSO James also reported that Plaintiff tampered with the GPS device, during that time.  *See*
Exh. 4.

hours he was required to work. *Id.* When CSO Campos inquired how it came to be that Plaintiff was working inordinately long days, Plaintiff stated that his employer was behind on contractual obligations and the overtime was mandatory. *Id.*

7.    CSO Campos advised Mr. Chandler that the scenario he presented was highly unusual, and he would like to verify the facts with Plaintiff's employer. At that time, Plaintiff voluntarily gave CSO Campos the contact information for his foreman. *Id.*

8.    On or about April 20, 2006, CSO Campos spoke with Mr. Chandler's foreman at his new job site. *Id.* The foreman indicated that Plaintiff's working hours were 5:30 a.m. to 4 p.m., on Mondays through Thursdays, and on Fridays from 5:30 a.m. until 2 p.m. The foreman further indicated that Plaintiff's ex-offender status would not present any difficulties for the employer. *Id.*

9.    Plaintiff continued his employment with the foregoing employer for several weeks after CSO Campos's telephone call to Plaintiff's foreman. *Id.*

10.    On July 27, 2006, CSO Campos requested that the Commission issue a warrant based on numerous parole violations committed by Plaintiff. *See* Exh. 7 at 7, 7/27/06 Report of Alleged Violation(s), (filed under seal). The violations included Plaintiff's failure to report for scheduled drug tests, failure to report as instructed, and instances in which he tampered with the GPS bracelet and failed to properly charge the bracelet. *Id.*

11.    CSO Campos reported that Plaintiff's adjustment in the community was poor and, despite the Agency's best efforts to support Plaintiff in the community, he continued to thwart those efforts by not complying with the conditions of supervision. *See* Exh. 7 at 7.

Respectfully submitted,


_____/s/_____
Jeffrey A. Taylor (D.C. Bar # 498610)
United States Attorney


_____/s/_____
Rudolph Contreras (D.C. Bar # 434122)
Assistant United States Attorney


_____/s/_____
Mercedeh Momeni
Assistant United States Attorney
Civil Division
555 4th Street, N.W.
Washington, D.C. 20530
(202) 305-4851


*OF COUNSEL:*
Stephen Arthur Bailey, Esq.
CSOSA, General Counsel's Office
633 Indiana Avenue, NW
Washington, DC 20004

And

Pamela Roberts, Esq.
U.S. Parole Commission
5550 Friendship Boulevard
Chavy Chase MD, 20815

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JOHNNY RAY CHANDLER, SR.** | ) |
| | ) |
| | ) |
| **Plaintiff** | ) |
| **v.** | ) |
| | ) **Civil Action No. 06-0664 (PLF)** |
| | )         **(ECF)** |
| **ANTHONY WILLIAMS, et al.,** | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

### MEMORANDUM OF POINTS AND AUTHORITIES IN
### SUPPORT OF FEDERAL DEFENDANTS' MOTION TO DISMISS
### OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT

Federal Defendants by and through the undersigned counsel, hereby submit their memorandum of points and authorities in support of their Motion to Dismiss, or in the Alternative, for Summary Judgment.

## I.       Introduction

At the time of filing his Complaint, Plaintiff, Johnny Ray Chandler, Sr., was a parolee under the supervision of the CSOSA.  He initiated the instant litigation against Federal Defendants, CSOSA employees Linwood Williams, Matthew Kiely, Gregory Campos, Danielle Johnson and former CSOSA employee Charles James (collectively, "CSOSA employees"), as well as CSOSA and USPC, for alleged tortious acts committed against him and alleged violations of his Constitutional rights.  Plaintiff also brings suit contending that CSO Campos violated his rights under the Privacy Act.

Specifically, Plaintiff alleges that the Federal Defendants required him to undergo a psychosexual risk assessment, submit to sex offender treatment, and comply with restrictions imposed on sex offenders even though he was not convicted of a sex offense or classified as a sex offender, in violation of his Constitutional rights. *See* Compl., Doc. No. 1. He alleges that the Federal Defendants therefore committed acts of libel, slander, defamation of character, coercion, harassment, and falsely accused and conspired against him. Plaintiff further alleges that the Federal Defendants violated his constitutionally-protected rights under the First, Fifth, Eighth, and Fourteenth amendments to the U.S. Constitution when they placed conditions on his parole such as placing restrictions on his viewing of sexually explicit materials. *See* Motion to Amend Compl., Doc. No. 4. He additionally alleges that CSO Campos's telephone call to his employer was a violation of the Privacy Act. *See* Motion to Amend Compl., Doc. No. 7 Finally, in April 2006, Plaintiff complains that previously named CSOSA employees and GPS technician Danielle Johnson conspired to harass and threaten him when they alleged that he had removed or tampered with the GPS device on his ankle. *See* Motion to Amend Compl., Doc. No. 18.

Plaintiff has requested monetary relief of $100,000 from CSOSA; $25,000 in punitive damages from Linwood Williams and Charles James, and $10,000 from each of the other individually-named Federal Defendants; and injunctive relief against Federal Defendants Williams and James. He has also requested $50,000 for alleged violation of his first amendment rights, $50,000 for alleged violation of his due process rights under the fifth and fourteenth amendments and $50,000 for alleged violation of his right against cruel and inhuman punishment under the eighth amendment. *See* Compl., Doc. No. 1 and subsequent Motions to Amend Doc. Nos. 4, 7, and 18.

As explained fully below, the alleged acts of which Plaintiff complains all fall within the scope of CSOSA's and USPC's routine business and standard operating procedure, in releasing and supervising Plaintiff in accordance with the terms and conditions of his parole established by the USPC.  Furthermore, as a parolee, limitations are placed on Plaintiff's activities beyond those placed on ordinary citizens.  Here, Plaintiff has failed to exhaust his administrative remedies with regard to his tort claims, as required by the Federal Tort Claims Act ("FTCA").  To the extent that he is suing the CSOSA employees in their official capacities, as well as the federal agencies, his claims are jurisdictionally barred by the doctrine of sovereign immunity and no Privacy Act claims may be brought against an individual.  To the extent that he is suing the CSOSA employees under *Bivens*,[4]  his suit must be dismissed because the CSOSA employees are entitled to immunity for acts taken at the direction of, or in order to assist, the USPC in carrying out its duties.  Moreover, it does not appear that Plaintiff ever effectuated proper service on the United States Attorney's Office, or the CSOSA employees in question.   Moreover, because the FTCA prohibits Defamation complaints, any related claims must be dismissed.  Finally, Plaintiff's Constitutional and conspiracy claims should be dismissed because, with respect to the former, he has failed to state any valid Constitutional claim and, with respect to the latter, has failed to show with the requisite degree of factual specificity and the Court lacks jurisdiction over any possible Section 1985 claims.

## II.    Statement of Facts

 Federal Defendants adopt, by reference, the attached Statement of Material Facts Not in Genuine Dispute.

---

[4] *See Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388 (1971).

### III.     STANDARD OF REVIEW

### A.  Lack of Subject Matter Jurisdiction

When reviewing a motion to dismiss for lack of jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), the Court "must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Warth v. Seldin*, 422 U.S. 490, 501 (1975).  Where a motion to dismiss, however, presents a dispute over the factual basis for the Court's jurisdiction, the Court "must go beyond the pleadings and resolve any disputed issues of fact the resolution of which is [sic] necessary to a ruling upon the motion to dismiss." *Phoenix Consulting, Inc. v. Rep. of Angola*, 216 F.3d 36, 40 (D.C. Cir. 2000).  "The plaintiff bears the burden of persuasion to establish subject matter jurisdiction by a preponderance of the evidence." *Pitney Bowes, Inc. v. United States Postal Serv.*, 27 F. Supp. 2d 15, 19 (D.D.C.1998).

### B.  Failure to State a Claim Upon which Relief May be Granted

When considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court must determine whether the Plaintiff has alleged sufficient facts in its complaint to state a cause of action. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  The Court must accept all well-pleaded facts as true. *Doe v. United States Dep't of Justice*, 753 F.2d 1092, 1102 (D.C. Cir. 1985). "However, the court need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint.  Nor must the court accept legal conclusions cast in the form of factual allegations." *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).  If, after reviewing the complaint, the Court finds "the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," the Court must dismiss the complaint. *Conley*, 355 U.S. 45-46.  Generally speaking, the Court should not consider

matters beyond the pleadings without converting the motion for summary judgment. *See* Fed. R. Civ. P. 12(b)(6).

### C.    Summary Judgment

Where no genuine dispute exists as to any material fact, summary judgment is required. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). A genuine issue of material fact is one that would change the outcome of the litigation. *Id*. at 247. "The burden on the moving party may be discharged by 'showing' -- that is, pointing out to the [Court] -- that there is an absence of evidence to support the non-moving party's case." *Sweats Fashions, Inc. v. Pannill Knitting Co., Inc.*, 833 F.2d 1560, 1563 (Fed. Cir. 1987).

Once the moving party has met its burden, the non-movant may not rest on mere allegations, but must instead proffer specific facts showing that a genuine issue exists for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Thus, to avoid summary judgment here, the Plaintiff (as the non-moving party) must present some objective evidence that would enable the Court to find he is entitled to relief. In *Celotex Corp. v. Catrett*, the Supreme Court held that, in responding to a proper motion for summary judgment, the party who bears the burden of proof on an issue at trial must "make a sufficient showing on an essential element of [his] case" to establish a genuine dispute. 477 U.S. 317, 322-23 (1986). In *Anderson* the Supreme Court further explained that "the mere existence of a scintilla of evidence in support of the Plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the Plaintiff." *Anderson*, 477 U.S. at 252; *see also Laningham v. Navy*, 813 F.2d 1236, 1242 (D.C. Cir. 1987) (the non-moving party is "required to provide evidence that would permit a reasonable jury to find" in its favor).

In *Celotex*, the Supreme Court further instructed that the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" 477 U.S. at 327 (quoting Fed. R. Civ. Pro. 1).

### IV.    Legal Arguments

### A.    The United States is the Only Proper Defendant for Purposes of Plaintiff's Common Law Tort Claims.

Plaintiff states that he is seeking monetary damages against each CSOSA employee in their individual capacities, as well as the named Agencies,[5] as noted in the Introduction Section, *supra*. Plaintiff's tort claims against Federal Defendants must be dismissed because the United States is the only proper defendant with respect to these claims. In late 1988, Congress enacted the Federal Employees Liability Reform and Tort Compensation Act of 1988 ("FELRTCA"), P.L. 100-694. The FELRTCA was the Congressional response to the Supreme Court's decision in *Westfall v. Erwin*, 484 U.S. 292 (1988), a case in which the Supreme Court made it more difficult for federal employees sued for common law torts in their individual capacities to obtain immunity from suit.

Because Congress perceived *Westfall* to constitute an "erosion of immunity of Federal employees" and found the decision created "an immediate crisis . . . for the entire Federal workforce," P.L. 100-694, section 2(a)(5), Congress amended the Federal Tort Claims Act, to provide for substitution of the United States as the exclusive defendant whenever federal employees are sued for common law tort claims arising out of actions taken within the scope of their federal employment. Specifically, 28 U.S.C. §2679(b)(1) was amended to provide:

---

[5]    See 28 U.S.C. § 2679(a), *Cox v. Sec. of Labor*, 739 F.Supp. 28 (D.D.C. 1990).

> The remedy against the United States provided by sections 1346(b) and 2672 of this title for injury or loss of property or personal injury or death arising or resulting from the negligent or wrongful act of omission of any employee of the Government while acting within the scope of his office or employment is exclusive of any other civil action or proceeding from money damages by reason of the same subject matter against the employee whose act or omission gave rise to the claim or against the estate of such employee.  Any other civil action or proceeding for money damages arising out of or relating to the same subject matter against the employee's estate is precluded without regard to when the act or omission occurred.

Similarly, 28 U.S.C. §2679(d)(1) was amended to provide:

> Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a United States district court shall be deemed an action against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant.

The effect of the statute is clear.  Once the Attorney General, or his designee, certifies that an individually sued federal defendant was acting within the scope of his employment, the United States must be substituted as the exclusive defendant for all common law tort claims.  Moreover, once substituted, all provisions and exclusions of the FTCA apply as if the United States were sued in the first instance.  28 U.S.C. §2679(d)(4).

In this case, substitution of the United States for the CSOSA employees is required.  The Attorney General has delegated his authority to issue certifications to the various United States Attorneys.  28 C.F.R. §15.3 (1988).  The United States Attorney re-delegated that authority to Rudolph Contreras, Chief of the Civil Division of the United States Attorney's Office.  Attached hereto is a certification by Mr. Contreras that the CSOSA employees were acting within the scope of their employment with the United States at the time of the incidents alleged in plaintiffs' complaint.  *See*, Exh. 1.  Accordingly, the United States "shall" be substituted as the

exclusive defendant in this matter and thus all common law claims against the CSOSA

employees as well as USPC and CSOSA must be dismissed.  Fed. R. Civ. P. 12(b)(1).

**B.  The Court Lacks Subject Matter Jurisdiction Over Plaintiff's Tort Claims Because Plaintiff has Failed to Exhaust his Administrative Remedies.**

When a plaintiff seeks monetary relief for torts against the United States or a department

of the United States, the only possible basis for relief is under the FTCA.  The FTCA authorizes

district courts to hear suits against the United States

> for money damages ... for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b); *see also Cope v. Scott*, 45 F.3d 445, 447 (D.C. Cir. 1995).

The FTCA, however, prohibits a plaintiff from filing suit in federal court until he has

exhausted his administrative remedies.  *Bancoult v. McNamara*, 370 F. Supp.2d 1, 10 (D.D.C.

2004).  Under the FTCA, exhaustion occurs once a plaintiff has presented to the appropriate

federal agency a claim describing with specificity the alleged injury and setting forth a sum

certain.  *Id*. at 11.  More particularly, this presentment requirement mandates that a claimant file

"(1) a written statement sufficiently describing the injury to enable the agency to begin its own

investigation, and (2) a sum-certain damages claim."  *Murphy v. United States*, 121 F. Supp.2d

21, 27 (D.D.C. 2000).  The purpose of the presentment requirement is to give notice to the

affected federal agency.  *Williams v. United States*, 932 F. Supp. 357, 361 (D.D.C. 1996).  To

that end, courts have construed the two elements of the presentment requirement as providing

"no more information than the regulations specify for the initial presentment of a claim: 'an

executed Standard Form 95 or other written notification of an incident, accompanied by a claim

for money damages in a sum certain.'" *Id*. at 361 (citing *GAF Corp. v. United States*, 818 F.2d 901, 920 (D.C. Cir. 1987).

Absent full compliance with the conditions placed upon waiver of sovereign immunity courts lack jurisdiction to entertain tort claims against the United States. *GAF Corp*., 818 F.2d at 904 and n.86 (D.C. Cir. 1987). One such condition is contained in 28 U.S.C. 2675(a) which states in part, "an action shall not be instituted upon a claim against the United States for damages . . . or personal injury . . . caused by . . . any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency . . . and [been] denied."

It is well established that a claimant bears the burden of alleging and demonstrating compliance with the requirements of the FTCA before a district court can exercise jurisdiction over an FTCA claim. *See In re Agent Orange Products Lab. Litig.*, 818 F.2d 210, 214 (2d Cir. 1987) ("The burden is on the plaintiff to both plead and prove compliance with the [FTCA's] statutory requirements. In the absence of such compliance, a district court has no subject matter jurisdiction over the plaintiff's claim."). Plaintiff fails to assert that he has presented any such claim for monetary damages to the Government. *See* Compl. Nor is there any record of Plaintiff filing and FTCA claim.[6] *See* Ex. 9, Arthur Elkins Declaration. Accordingly, the Court lacks subject matter jurisdiction over Plaintiff's FTCA claims.

---

[6] Although the Plaintiff has sent various correspondence requesting administrative action relating to his assignment to CSOSAs Sex Offender Unit, he has not filed an actual claim which includes a claim for monetary damages.

**C.  Plaintiff Has Failed to State a Cause of Action for Which Relief can be Granted.**

**1.    The FTCA Prohibits Defamation Claims.**

The FTCA specifies certain torts for which the statute expressly does *not* waive the government's sovereign immunity; one of the exceptions is for claims based on "libel [or] slander." 28 U.S.C. § 2680(h).  Courts consistently treat defamation claims as included within libel and slander exception to the FTCA.  *See, e.g., Gardner v. United States*, 213 F.3d 735 (D.C. Cir. 2000); *Moessmer v. United States*, 760 F.2d 236 (8th Cir. 1985); *Johnson v. Brady*, 1991 U.S. Dist. LEXIS 3840 (D.D.C. 1991).  In *Gardner*, a taxpayer claimed that the Internal Revenue Service defamed him when it disclosed his tax returns and tax information.  *Gardner*, 213 F.3d at 737.  The D.C. Circuit upheld dismissal of the claim, finding that the taxpayer's "defamation claim against the United States is barred, because suits for libel or slander are prohibited under the Federal Tort Claims Act." *Id*. at 738 n.1.

In the instant matter, Plaintiff alleges defamation, slander and libel against Federal Defendants, when Plaintiff's CSOs suggested and USPC approved the changes in his parole conditions and for alleged statements the SCOs made regarding alleged parole violations that may have been committed by Plaintiff.  *See* Doc. Nos. 1, and 7 and Exhs. 4 and 6.  Such a defamation claim falls within the libel or slander exception to the FTCA, and must be dismissed for failure to state a claim upon which relief may be granted.

**2.    Plaintiff Fails to State a Claim of Defamation.**

Even if the Plaintiff were somehow able to proceed under a state law civil tort action against the United States, ignoring sovereign immunity and the fact that the FTCA bars actions in defamation, the Complaint fails to state a claim of defamation under the well established law

in the District of Columbia. To state a claim of defamation under the law of D.C., a complaint

must allege:

> (1) that the defendant made a *false and defamatory* statement concerning the plaintiff;
> (2) that the defendant published the statement without privilege to a third party;
> (3) that the defendant's fault in publishing the statement amounted to at least negligence; and
> (4) that either the statement was actionable as a matter of law irrespective of special harm or its publication *caused* the plaintiff special harm.

*Benic v. Reuters America, Inc.*, 357 F. Supp.2d 216, 220-21 (D.D.C. 2004) (citing *Klayman v.*

*Segal*, 783 A.2d 607, 613 n.4 (D.C. 2001)) (emphasis added). *See also Beeton v. District of*

*Columbia*, 779 A.2d 918, 923 (D.C. 2001). To satisfy the first element, Plaintiff must allege

facts sufficient to show that Federal Defendant's statements made him appear "odious, infamous,

or ridiculous." *Howard Univ. v. Best*, 484 A.2d 958, 989 (D.C. 2001). The statements "must be

more than unpleasant or offensive" to qualify as defamatory. *Id.*

Here, it is unclear exactly about which communications Plaintiff is aggrieved. Indeed, no

statement was published to a third party without privilege, as required by the second prong of the

*Benic* test. CSO James acted on information about Plaintiff's potentially dangerous conduct,

provided by two women in the community, which CSO James believed in good faith gave rise to

the need for a psychosexual assessment. *See* SMF, paras. 3-5. Dr. Brodie conducted an

examination and recommended a transfer to the Sex Offender Unit due to the high risks that

Plaintiff potentially posed to the community. *See* Exh. 5. To ensure the safety of the public,

CSOSA acted on Dr. Brodie's recommendation in requesting transfer of Plaintiff's supervision

to the Sex Offender Unit. USPC approved this request. *See* Exh. 6. If Plaintiff complains that

CSO James should not have referred him to Dr. Brodie's clinic for testing, then CSO James

would be remiss in his duties to protect the public. If Plaintiff's problem lies with the

communications between CSOSA and USPC, the two entities collaborate in the release and supervision of individuals such as Plaintiff and the exchange of information between the two is routine and necessary. Therefore, Plaintiff is unable to meet the second prong of the test. Even if this Court rejects the arguments above regarding dismissal for lack of subject matter jurisdiction under Rule 12(b)(1), this Court should dismiss Plaintiff's Complaint for failure to state a claim under Rule 12(b)(6). This conclusion applies both to Plaintiff's Complaint as drafted, and to any implied claims against the CSOSA employees in their individual capacity.

### 3. Plaintiff's Claims Against Federal Defendants in Their Official Capacities Are Jurisdictionally Barred by the Doctrine of Sovereign Immunity.

To the extent Plaintiff is suing Federal Defendants in their official capacities, the suit is barred by the doctrine of sovereign immunity. *See, e.g., Meyer v. Reno,* 911 F.Supp. 11 (D.D.C. 1996); *Marshall v. Reno,* 915 F.Supp. 426 (D.D.C. 1996). Plaintiff's claims against Federal Defendants in their official capacities are, under law, claims asserted against the United States. *Atchison v. District of Columbia,* 73. F.3d 418, 424 (D.C. Cir. 1996) (government officials are not personally liable for damages when sued in their official capacities; damages action is equivalent to one against the government itself). The United States, as sovereign, "is immune from suit save as it consents to be sued, and the terms of consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Sherwood,* 312 U.S. 586, 770 (1941); *United States v. Testan*, 424 U.S. 392, 399 (1976) ("except as Congress has consented to a cause of action against the United States, 'there is no jurisdiction . . . to entertain suits against the United States'") (*quoting Sherwood*); *see also United States v. Mitchell,* 463 U.S. 206, 212 (1983) ("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction."). That a plaintiff may name federal

employees as defendants in their official capacities does not operate to evade the immunity of the sovereign. *See Clark v. Library of Congress,* 750 F.2d 89, 102-04 (D.C. Cir. 1984).

Therefore, to the extent that Plaintiff seeks money damages against Federal Defendants in their official capacity for alleged constitutional violations, his complaint must be dismissed for lack of subject matter jurisdiction because the United States has not waived sovereign immunity for such claims. *See FDIC v. Meyer,* 510 U.S. 471, 478 (1994) (United States has not waived sovereign immunity for money damages sounding in constitutional tort); *Chen v. United States,* 854 F.2d 622, 625-26 (2d Cir. 1988) (United States has not waived sovereign immunity for claims based on violations of constitution, statute, or regulations). Plaintiff's Complaint does not contain any colorable basis for such a waiver. Moreover, it does not appear that Plaintiff ever effectuated proper service on any of the Federal Defendants since court leave was not obtained prior to his attempted service of his summons and complaint upon Federal Defendants. For the stated reasons given above, Plaintiff's claims should be dismissed.

4. **To the Extent that Plaintiff's Claims May be Deemed as a *Bivens* Complaint, they Must Be Dismissed Because Federal Defendants are Immune From Suit in Their Personal or Individual Capacity.**

Federal Defendants are entitled immunity against Plaintiff's claims. It is well-established that members of the judiciary are entitled to absolute immunity, *Pierson v. Ray,* 386 U.S. 547 (1967), and the Supreme Court has extended this absolute immunity to certain officials who perform functions closely associated with the judicial process. *See, e.g., Butz v. Economou,* 438 U.S. 478 (1978) (hearing examiners entitled to absolute immunity). For example, absolute immunity has been extended to parole officials when they perform tasks that are functionally comparable to those of judges. *Walrath v. United States,* 35 F.3d 277 (7th Cir. 1994) (parole revocation decisions made by Commissioner and Commission staff are absolutely immune from

suit); *Harper v. Jeffries,* 808 F.2d 281, 284 (3rd Cir. 1986) (absolute immunity for hearing

examiner who conducted detention proceeding and made recommendation to parole board).

Moreover, absolute immunity has been extended to the acts of parole officers and other

governmental officials taken at the direction of, or in order to assist, the parole board in carrying

out its duties. *Sykes v. James,* 13 F.3d 515, 521 (parole officer entitled to absolute immunity in §

1983 action that officer submitted false affidavit in revocation proceeding); *Dorman v. Higgins,*

821 F.2d 133, 136 (2d Cir. 1987) (probation officer entitled to absolute immunity in connection

with preparation of presentence reports); *Turner v. Barry,* 856 F.2d 1539, 1541 (D.C. Cir. 1988)

(probation officers absolutely immune from liability in civil rights action under §1983 for

alleged errors in investigation and preparation of presentence reports); *see also Cunningham v.

District of Columbia,* 584 A. 2d 573, 577-78 (D.C. 1990) (regardless of status as employee or

independent contractor, physician who examined parolee at direction of parole board entitled to

absolute immunity). Accordingly, the CSOSA parole supervision officers in this case, whose

functions are closely related to the judicial process, are also entitled to absolute immunity, and

all claims against them in their individual capacities should be dismissed. In addition, the

CSOSA electronic monitoring technician named in this case was merely performing functions

that were directly related to the supervision of the Plaintiff and, therefore, she is also entitled to

absolute immunity in this case. Any claims against her in her individual capacity should also be

dismissed.

But even if it were decided that the individual Federal Defendants were not entitled to

absolute immunity, they would at a minimum, be entitled to qualified immunity from

constitutional and statutory claims. *Cleavinger v. Saxner,* 474 U.S. 193, 206 (1985); *Harlow v.

Fitzgerald,* 457 U.S. 800, 818 (1982). Government officials are shielded from liability for civil

damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Hawlow,* 457 U.S. at 818; *Farmer v. Moritsugu,* 163 F.3d 610, 613 (D.C. Cir. 1998); *see* also *Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985) ("[u]nless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery."). In other words, in order for a person to have a clearly established right, the right must also be sufficiently clear such that any reasonable government employee should have known they were violating the Constitution. *See Anderson v. Creighton,* 483 U.S. 635, 640 (1987). Here, the actions of Federal Defendants in requiring that the offender undergo a psychosexual risk assessment, comply with the conditions imposed by the USPC relating to sex offender treatment and GPS monitoring requirements did not violate any clearly established statutory or constitutional right of the offender. *See* Exhs. 4, 6 and 7.

In reviewing the applicability of the qualified immunity defense, a two-prong test has been used. First, courts look at whether "the facts show the officer's conduct violated a constitutional right." *Lederman v. United States,* 291 F.3d 36, 46 (D.C. Cir. 2002) (citations omitted). Defendants are only liable "if they knew, or were unreasonable in not knowing, that their behavior violated the Constitution." *Harris v. District of Columbia,* 932 F.2d 10, 13 (D.C. Cir. 1991). Second, the court must determine whether the right was clearly established. *See Butera v. District of Columbia,* 235 F.3d 637, 652 (D.C. Cir. 2001) (holding that in order to assess whether a particular right is sufficiently established to place a defendant on notice that his conduct was unconstitutional, the court must look to decisions of: the Supreme Court, the District of Columbia Circuit, and to the extent there is a consensus, other circuits [that] have clearly spoken on the lawfulness of the conduct at issue").

In this case, Federal Defendants did not violate Plaintiff's statutory or Constitutional rights when they acted in accordance with their required agency responsibilities and duties as CSOs to supervise Plaintiff's compliance with the conditions of parole established by the USPC, and to make recommendations to the USPC as deemed warranted regarding imposition of additional conditions. *See* Exhs. 4 and 7. Thus, even if the supervisory responsibilities and duties exercised by the Federal Defendants were considered to be more executive than judicial or adjudicatory in nature, *see Harper v. Jeffries*, 808 F. 2d 281, 284 (3rd Cir. 1986), their alleged actions in performing them would still be subject to qualified, good-faith immunity from a suit for damages absent a showing that their conduct violated a clearly established statutory or constitutional right of which a reasonable person would have known. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Since Ms. Johnson, the electronic monitoring technician, also acted in accordance with her required agency responsibilities and duties in furtherance of the offender's supervision and compliance with the terms and conditions of his parole, she would also be subject to qualified, good-faith immunity from suit for damages. These very same principles would also apply to her actions.

### D.    Suits Against Individuals Are Not Available Under Privacy Act.

Preliminarily, the offense of conviction is included in the list of information deemed to be public sector information that may be disclosed to third parties without the consent of the file subject. *See* 28 C.F.R. Section 2.37(c ). Thus, Plaintiff cannot contend that CSO Campos's conversation with his foreman, wherein the CSO informed the foreman that he was Plaintiff's parole officer, was a violation of the Privacy Act.

As stated by the court in *Bavido v. Apfel*, 215 F.3d 743 (7th Cir. 2000), "[t]he Privacy Act authorizes suit only against an agency, and not an individual . . . .  Several courts, including our

own, have held that individual officers of federal agencies are not proper parties to a Privacy Act action." *Id*. at 747; *accord, Mittleman v. United States Treasury*, 773 F.Supp 442, 450 (D.D.C. 1991). CSO Campos is identified on the face of the Complaint as a subordinate official of the CSOSA. *See* Doc. No. 7, at 5. [7] Accordingly, CSO Campos is not a proper party defendant, since the Privacy Act grants district courts jurisdiction only over a "civil action against the agency," and the only entity against which relief may be granted is "the United States." 5 U.S.C. § 552a(g) (emphasis added). The Privacy Act does not allow suits against subordinate agency officials. *Connelly v. Comptroller of the Currency*, 876 F.2d 1209, 1215 (5th Cir. 1989); *Doe v. Naval Air Station*, 768 F.2d 1229, 1231 n.1 (11th Cir. 1985); *Brown-Bey v. United States*, 720 F.2d 467, 469 (7th Cir. 1983); *Windsor v. The Tennessean*, 719 F.2d 155, 160 (6th Cir. 1983), *cert. denied*, 469 U.S. 826 (1984); *Jarrell v. Tisch*, 656 F. Supp. 237, 238-39 (D.D.C. 1987); *Smiertka v. United States Dep't of the Treasury*, 447 F. Supp. 221, 221 n.1 (D.D.C. 1978). Furthermore, Plaintiff's claim that CSO Campos's statements to Plaintiff's employer, about being Plaintiff's parole officer, was an "invasion of [his] privacy" is illogical and counter-intuitive because he gave CSO Campos his consent for the phone call in question. *See* Doc. No. 7 at 5 and Exh. 8.

### E. Any Implied Privacy Act Claim Against CSOSA Must Fail.

In his Motion to Amend, Plaintiff only names CSO Campos as the alleged violator of the Privacy Act. *See* Doc. No. 7. However, should the Court deem the Privacy Act claim to be brought against CSOSA, such a claim must fail because Plaintiff suffered no damages as a result of CSO Campos's telephone call to his foreman. A plaintiff is entitled to recover for "actual damages," pursuant to the Privacy Act. 5 U.S.C. § 552a(g)(4)(A). In *Doe v. Chao*, 540 U.S. 614,

---

[7] Because Plaintiff did not number the pages of his motion to amend, references to page numbers are based on the ECF stamp atop the document, *e.g.* "Page 5 of 9".

626 (2004), the Supreme Court held that to claim an entitlement to damages under the Privacy

Act a plaintiff must show that he suffered actual damages. *Id*. n. 12.

In this matter, Plaintiff simply states that prior to the call his employer was unaware of

his status as an offender. *See* Doc. No. 7. However, he does not claim to have suffered any

injury whatsoever. *Id*. Indeed, his foreman informed CSO Campos that the company had no

difficulty with the Plaintiff's status. *See* Exh. 8. Plaintiff continued his employment with the

company in question for several weeks after CSO Campos's telephone conversation with his

foreman. *Id*. Accordingly, because no injury is claimed and no relief is requested, Plaintiff's

claims under the Privacy Act must fail.

### F. Plaintiff's Constitutional and Conspiracy Claims against Federal Defendants Should Be Dismissed.

Plaintiff has failed to state any valid constitutional claim against Federal Defendants.

Although a court should dismiss a complaint only where "'it appears beyond doubt that the

plaintiff can prove no set of facts in support of his claim which would entitle him to relief,'"

*Allen v. Westpoint-Pepperell, Inc.*, 945 F. 2d 40, 44 (2d Cir. 1991) (*quoting Conley v. Gibson*,

355 U.S. 41, 45-46 (1957)), and that this applies with greater force where the Plaintiff *pro se* is

alleging civil rights violations, *see Easton v. Sundram*, 947 F. 2d 1011, 1015 (2d Cir. 19091),

*cert. denied*, 504 U.S. 911 (1992), the vague and conclusory allegations pleaded here of

violations of the Fifth, Eighth, and Fourteenth amendments should still be dismissed under Rule

12(b)(6) of the Federal Rules of Civil Procedure. *See San Filippo v. U.S. Trust Co.*, 737 F. 2d

246, 256 (2d Cir. 1984), *cert. denied*, 470 U.S. 1035 (1985). Each of the actions of which

Plaintiff complains were in furtherance of the supervisory responsibilities of the Federal

Defendants in accordance with Agency rules and regulations and the terms and conditions

provided by the USPC.   *See* SMF, generally. As such, Plaintiff cannot establish facts in support of his constitutional claims that entitle him to relief.

**1.    Plaintiff's Constitutional Claims Must Be Dismissed.**

Plaintiff claims that Federal Defendants have violated his Constitutional right to view sexually explicit material in violation of the First Amendment.  He also alleges that the defendants have denied him due process in violation of the Fifth and Fourteenth amendments. Plaintiff's claims are without merit.

Plaintiff has failed to allege facts that would form a basis for finding that he was deprived by the Federal Defendants of rights, privileges and immunities secured by the Constitution or laws of the United States.  CSOSA has rightfully recommended and the Commission has lawfully imposed the Special Sex Offender Aftercare condition in Plaintiff's case.  *See* Exhs. 4 and 6.  This condition was imposed based on information gathered by Plaintiff's CSO and a psychologist who determined that Plaintiff was at risk of committing sexual violence.  Under the Commission's regulations for D.C. Code offenders, USPC may impose a special condition other than one of the general conditions of release ". . . if the Commission determines that such condition is necessary to protect the public from further crimes by the releasee and provide adequate supervision of the releasee."  28 C.F.R. Section 2.85(b).

As a parolee, limitations are placed on Plaintiff's activities beyond those placed on ordinary citizens.   As a general matter, parolees ". . .  are subjected to specified conditions for the duration of their terms.  The conditions restrict their activities substantially beyond the ordinary restrictions imposed by law."  *Morrissey v. Brewer*, 408 U.S. 471, 478 (1972).  The government need only show a legitimate government interest and a rational relationship between the prohibited conduct and the objectives of parole in order to prohibit otherwise constitutionally

protected behavior.  *See Berrigan v. Sigler*, 499 F.2d 514, 522 (D.C. Cir. 1974); *Bagley v. Harvey*, 718 F.2d 921, 924-25 (9th Cir. 1983).  *See also Bizron v. King*, 469 F.2d 1241, 1243 (2d Cir. 1972)("[T]he Government can infringe upon the first amendment rights of prisoners so long as the restrictions are reasonably and necessarily related to the advancement of some justifiable purpose of imprisonment . . . . when a convict is conditionally released on parole, the Government retains a substantial interest in insuring that its rehabilitative goal is not frustrated and the public is protected from further criminal acts by the parolee.").

In this case, Federal Defendants have a statutory responsibility to ensure that the public is protected from further crimes of violence by Plaintiff.  *See* D.C. Code Section 24-404 and Section 406; *White v. Hyman*, 647 A.2d 1175 (D.C. 1994)("public safety" is a legitimate concern under D.C. law).  The Commission's imposition of the Special Sex Offender Aftercare condition is clearly rational.  In order to fully participate in treatment, Plaintiff must refrain from viewing sexually explicit material.  The restrictions placed on the Plaintiff are to permit him to fully participate in successful treatment.  The need for the Special Aftercare Condition became clear once Plaintiff's CSO was contacted by females in the community who had received disturbing communications from plaintiff.  This communication was not only provocative in nature but also threatening.  Plaintiff's need for sex offender treatment was established following a psychosexual risk assessment in which the psychologist concluded that Plaintiff is at high risk for perpetrating sexual violence.  *See* Exh. 5.

After filing this Complaint, Plaintiff was returned to custody as a parole violator based on violations of his parole.  The violations included not only violations of the Special Sex Offender Aftercare Condition but also violations that Plaintiff failed to submit to drug testing.   Once he was returned to custody, he was provided with a parole revocation hearing and afforded all of his

rights in connection with the hearing.  These rights included representation by an attorney and a full opportunity to respond to the charges.[8]  Plaintiff has limited due process rights as a parole violator.  *See Morrissey v. Brewer*, 408 U.S. at 478.

## 2. Plaintiff's Mere Allegations of Conspiracy Allegations Fail to State a Claim.

Plaintiff has alleged that the Federal Defendants conspired against him but has not specified which federal conspiracy statute, if any, applies here.  *See* Doc. Nos. 1 and 18. Plaintiff alleges that Federal Defendants, apparently including Ms. Johnson, have engaged in a conspiracy to violate his Constitutional rights when they "coerced" him to agree to supervision by the Sex Offender Unit, (*See* Doc. No. 1), and when the GPS device was replaced on his ankle, after he was found to have tampered with it, (*See* Doc. No. 18 and Exh. 4).  To the extent Plaintiff suggests that some conspiracy existed between Federal Defendants, the allegation falls short of asserting a cause of action.  As the D.C. Circuit has explained in the conspiracy setting,

> [u]nsupported factual allegations which fail to specify in detail the factual basis necessary to enable [defendants] to intelligently prepare their defense, will not suffice to sustain a claim of governmental conspiracy to deprive [plaintiffs] of their constitutional rights.

*Martin v. Malhoyt*, 830 F.2d 237, 258 (D.C. Cir. 1987)(citation omitted).  Plaintiff has asserted no factual basis for any conclusion that a conspiracy existed.  As noted by Plaintiff's CSOs' Reports of Alleged Violations and Dr. Brodie's findings, a high risk of the commission of a crime existed and CSOSA employees were merely following procedure to ensure the safety of the public.  Therefore, with respect to these unsupported claims, Plaintiff's claims should be dismissed.

---

[8] Following the revocation hearing, it was the Commission's determination that Plaintiff had violated the conditions of his parole. Plaintiff remains in custody.

**G.  The Court Lacks Subject Matter Jurisdiction under 42 U.S.C. § 1985(3) Conspiracy to Interfere with Civil Rights) over Plaintiff's Conspiracy Allegation.**

To the extent that Plaintiff suggests that his claims confer jurisdiction on the Court to entertain Plaintiff's allegation that the Defendant and its agents conspired to interfere with his civil rights pursuant to 42 U.S.C. § 1985, it should be noted that section 1985 is only a remedy for the violation of civil rights created elsewhere in the federal law and cannot be invoked by the Plaintiff, in the absence of an independent cause of action, to confer subject matter jurisdiction on the court.

Section 1985 (3) of Title 42 is purely a remedial statute that provides a civil cause of action when some otherwise defined federal right (*i.e.*, equal protection of the laws or equal privileges and immunities under the laws) is breached by a conspiracy in the manner defined by subsection three.  *See, e.g., Great American Federal Savings and Loan Ass'n v. Novotny*, 442 U.S. 366 (1979); *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 616-618, 620 (1979). This statute, by itself, creates no substantive rights, therefore, Plaintiff cannot claim a violation of § 1985(3) by itself.  *Great American Federal Savings and Loan Ass'n*, 442 U.S. at 366-368. Plaintiff must identify an authorized cause of action based on the deprivation of civil rights, as guaranteed by an Act of Congress, in order to establish subject matter jurisdiction of the Court over his conspiracy allegations.  Plaintiff has failed to identify such a cause of action.  Moreover, Section 1985 (3) does not, by itself, confer subject matter jurisdiction on the Court.  42 U.S.C. §§ 1983, 1985.  Accordingly, Plaintiff's conspiracy claims should be dismissed.

**H.  Even If Plaintiff Made a Colorable Individual Claim, Service of Process Is Insufficient.**

Any claims against CSOSA employees in their personal capacities should also be dismissed for insufficiency of service of process.  Individually-named federal defendants sued in

their personal capacities must be served with process in accordance with rules applicable to

individual defendants.  *See Simpkins v. District of Columbia Government*, 108 F.3d 366, 369

(D.C. Cir. 1997).  Rule 4(e) requires service of process either: (1) according to the state's rules

for service of process in a civil action, or (2) by personal delivery to the defendant or leaving a

copy with a person of suitable age and discretion at the person's dwelling.  *See* Fed. R. Civ. Pro.

4(e).  Service of process under the rules for the D.C. Superior Court provide that service upon

individuals requires either personal delivery, delivery to the individual's dwelling to a person of

suitable age and discretion, or delivery to an agent authorized to accept service for the individual.

*See* Super. Ct. Civ. Pro. R. 4(e).

Plaintiff's attempt to serve Messrs. James, Williams, Kiely, and Campos and Ms.

Johnson at work, *see* Doc. Nos. 1, 4 and 18, does not suffice for proper service for individual

capacity claims.  *See Leichtman v. Koons*, 527 A.2d 745, 747 and n.5 (D.C. 1987) (office

employee with authority to receive business mail does not, by virtue of that position, have

authority to receive process, and actual knowledge of the existence of a lawsuit is no substitute

for personal service).  Nor have the CSOSA employees been served personally or at their

respective dwellings.

The Federal Defendants' limited appearance herein in the form of this motion to dismiss

does not constitute acquiescence in the manner of service or a waiver of proper service.

Furthermore, Rule 4(i)(l) of the Federal Rules of Civil Procedure, requires that service on the

United States Attorney for the District in which a civil action is brought may be accomplished by

hand delivery of the summons and complaint to the United States Attorney, or an Assistant

United States Attorney or clerical employee designated to receive service on the United States

Attorney's behalf.  In this Office, the United States Attorney has designated the Secretary, or

acting Secretary, to the Chief of the Civil Division, as well as the Secretaries to the Deputy Chiefs of the Division, as persons to whom hand-delivery of a summons and complaint may be made.  Alternatively, Rule 4(i)(1) permits service to be accomplished by sending the summons and complaint by registered or certified mail addressed to the "Civil Process Clerk" at the Office of the United States Attorney.

A thorough search was conducted in this office by designated staff and it appears that Plaintiff never served this office.  *See* Exh. 10, Declaration of Cindy Parker.  Consequently, service is insufficient because it was not accomplished in accordance with the applicable Federal Rule of Civil Procedure.

## **CONCLUSION**

Accordingly, for all the reasons stated above, Plaintiff's claims against Federal

Defendants should be dismissed with prejudice.

Respectfully submitted,

_____/s/_____
Jeffrey A. Taylor (D.C. Bar # 498610)
United States Attorney


_____/s/_____
Rudolph Contreras (D.C. Bar # 434122)
Assistant United States Attorney


_____/s/_____
Mercedeh Momeni
Assistant United States Attorney
Civil Division
555 4th Street, N.W.
Washington, D.C. 20530
(202) 305-4851

*OF COUNSEL*:
Stephen Arthur Bailey, Esq.
CSOSA, General Counsel's Office
633 Indiana Avenue, NW
Washington, DC 20004

And

Pamela Roberts, Esq.
U.S. Parole Commission
5550 Friendship Boulevard
Chavy Chase MD, 20815

## CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of February, 2007, I caused the foregoing *Motion to Dismiss or in the Alternative for Summary Judgment and attachments* to be served on parties of record via ECF and *pro se* Plaintiff, postage prepaid, addressed as follows:

**JOHNNY RAY CHANDLER, SR.**
**R11977-007**
**PETERSBURG FEDERAL CORRECTIONAL CENTER**
**Medium**
**P.O. Box 90043**
**Petersburg, VA  23804**


_____/s/_____
MERCEDEH MOMENI
Assistant United States Attorney
555 4th Street, NW
Civil Division
Washington, DC 20530
(202) 305-4851
(202) 514-8780 (facsimile)