UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
JOHNNY RAY CHANDLER, SR.,           )
                                    )
        Plaintiff,                  )
                                    )
    v.                              )        Civil Action No. 06-664
                                    )
CHARLES JAMES, *et al.*,            )
                                    )
        Defendants.                 )
_____)

OPINION

        This matter is before the Court on the motion of the United States, the United

States Parole Commission ("USPC"), the Court Services and Offender Agency ("CSOSA"),

Charles James, and Linwood A. Williams (together, "the federal defendants") to dismiss the

plaintiff's claims against them or, in the alternative, for summary judgment.  Also pending are a

total of seventeen motions filed by the plaintiff, consisting of ten motions to amend or

supplement the complaint; a motion "to produce evidence" that is, in effect, another motion to

amend the complaint; two motions to stay the case; one motion to lift the (nonexistent) stay; two

motions for judgment on the pleadings; and a motion for summary judgment.[1]  Because the

_____

        [1]      The papers considered by the Court include the following: the plaintiff's
complaint (attached to Notice of Removal) ("Compl."); the federal defendants' motion to dismiss
or, in the alternative, for summary judgment ("MTD"); the federal defendants' Statement of
Material Facts Not in Genuine Dispute (attached to the motion to dismiss or for summary
judgment) ("MTD SMF"); the plaintiff's opposition to the defendants' motion ("Opp.");
plaintiff's first motion to amend or supplement his complaint (Docket No. 4) ("1st Mot. Am.");
his second such motion (Docket No. 7) ("2d Mot. Am."); his third such motion (Docket No. 13)
("3d Mot. Am."); his fourth such motion (Docket No. 18) ("4th Mot. Am."); his fifth such
motion (Docket No. 24) ("5th Mot. Am."); his sixth such motion (Docket No. 50) ("6th Mot.
Am."); his seventh such motion (Docket No. 57) ("7th Mot. Am."); his eighth such motion
(Docket No. 63) ("8th Mot. Am."); his ninth such motion (Docket No. 70) ("9th Mot. Am."); his

plaintiff's original claims may have some merit, although not as to all defendants, the Court will

grant in part and deny in part the federal defendants' motion to dismiss or for summary judgment

and will appoint counsel for the plaintiff, who currently proceeds *pro se*.  The plaintiff's many

motions are generally frivolous and so will be denied, in almost all instances with prejudice.

## I.  BACKGROUND

### A.  *Mr. Chandler*

Plaintiff Johnny Ray Chandler, Sr. is currently incarcerated in federal prison in

Lewisburg, Pennsylvania, having been convicted in the Superior Court of the District of

Columbia of attempted robbery, robbery, armed robbery, and assault with a dangerous weapon.

See Compl. at 3; Notice of Change of Address, Docket No. 73, at 1; MTD SMF ¶ 1.  Since he

initially began serving his sentence in 1991, see MTD SMF ¶ 1, Mr. Chandler has become a

veteran *pro se* litigant.  He has sued, among many others, his parole officer, for "'malicious

breach of contract,'" Chandler v. Kiely, 539 F. Supp. 2d 220, 221 (D.D.C. 2008); the Bureau of

Prisons, for taking various disciplinary actions against him, see Chandler v. Fed. Bureau of

Prisons, Civil Action No. 09-1902, 2010 WL 364325, at *1 (W.D. La. Feb. 1, 2010); several

prison officials, for placing him in administrative segrgation, see Chandler v. Henderson, No.

---

tenth such motion (Docket No. 76) ("10th Mot. Am."); plaintiff's "Motion to Produce Evidence,"
which the Court construes as a motion to amend his complaint to allege exhaustion of
administrative remedies (Docket No. 71) ("Misc. Mot. Am."); plaintiff's Request for Case to Be
Held in Abeyance (Docket No. 39) ("1st Mot. Stay"); plaintiff's second such motion (Docket No.
65) ("2d Mot. Stay"); plaintiff's "Motion to Have Case Taken Out of Abeyance" ("Mot. Lift
Stay"); plaintiff's first motion for judgment on the pleadings (Docket No. 64) ("1st MJP");
plaintiff's second such motion (Docket No. 77) ("2d MJP"); and plaintiff's motion for summary
judgment ("PMSJ").

95-7243, 1996 WL 587648, at *1 (D.C. Cir. Sept. 16, 1996); various other prison officials, for threatening his life or failing to take action when he claimed his life had been threatened, see Chandler v. D.C. Dep't of Corr., 145 F.3d 1355, 1357 (D.C. Cir. 1998); his former employer, for allegedly discriminating against him, see Chandler v. W.E. Welch & Assocs., Inc., 533 F. Supp. 2d 94, 98 (D.D.C. 2008); and the District of Columbia, for failing to provide a ladder for Mr. Chandler to use when climbing into the bunk bed in his prison cell.  See Chandler v. District of Columbia, 578 F. Supp. 2d 73, 75 (D.D.C. 2008).  He has also filed numerous unsuccessful petitions for a writ of mandamus or habeas corpus.  See, e.g., In re: Johnny Ray Chandler, No. 03-5147, 2003 WL 22097947, at *1 (D.C. Cir. Aug. 27, 2003); Chandler v. Young, Civil Action No. 09-1810, 2010 WL 2464837, at *1 (W.D. La. May 19, 2010); Chandler v. Keffer, Civil Action No. 09-0415, 2009 WL 4718871, at *1 (W.D. La. Dec. 7, 2009).

Mr. Chandler's legal complaints have been so numerous and so lacking in merit that he is now barred, except in extraordinary circumstances, from filing new lawsuits while in prison without first paying the full amount of any administrative filing fee.  See In re: Johnny Ray Chandler, No. 02-5093, 2002 WL 1876999, at *1 (D.C. Cir. Aug. 14, 2002) (noting that under 28 U.S.C. § 1915(g), Mr. Chandler must, unless in "imminent danger of serious physical injury," pay the required filing fee in order to initiate any further litigation while incarcerated). Indeed, Mr. Chandler's abuse of the court system has been so systematic that he may not file any civil action in this Court without first obtaining permission.  See Chandler v. D.C. Dep't of Corr., Civil Action No. 95-2366, Memorandum Order (D.D.C. Mar. 11, 1996).

*B.  Sex Offender Treatment*

Perhaps because of the continuing sanctions imposed upon him in this Court, Mr.
Chandler filed the instant case first in the Superior Court of the District of Columbia.  His
complaint named as defendants the District of Columbia — which has since been dismissed from
the case with Mr. Chandler's consent — the Court Services and Offender Supervision Agency,
an agency of the federal government; Charles James, Mr. Chandler's community supervision
officer; Linwood A. Williams, Mr. James' supervisor; and Phyllis Brodie, a clinical psychologist.
See Compl. at 1.  Mr. Chandler alleges that while on parole in August 2005, he was ordered by
Mr. James to meet with Dr. Brodie for an assessment of his mental health.  Id. at 2.  After that
evaluation by Dr. Brodie, Mr. Chandler was told by Mr. James in December 2005 that he would
be required to consent to the transfer of his parole supervision to "the District of Columbia's[]
Sex Offenders Unit," and to submit to GPS monitoring.  Id.  Mr. Chandler understood that if he
did not agree to be supervised by the Sex Offenders Unit and to GPS monitoring, his parole
would be revoked.  Id.  These requirements were imposed on Mr. Chandler even though he had
never been convicted of a sex offense.  Id. at 3.  Mr. Chandler asserts in his complaint that the
defendants are liable for libel, slander, defamation, and "false accusation" (because they falsely
"label[ed him] as a Sex Offender"); for coercion and harassment (because Mr. Chandler had to
agree to supervision by the Sex Offender Unit if he wished to prevent his parole from being
revoked); for "conspiracy"; and for violations of the Fifth, Fourteenth, and Eighth Amendments.
Compl. at 1-2, 4.

After the filing of the plaintiff's original (and still only operative) complaint, the
United States certified that Mr. James and Mr. Williams had been "acting within the scope of

4

their employment as employees of the United States at the time of the" events alleged in the complaint, substituted itself as a defendant, and removed the litigation to this Court. See Notice of Removal, Ex. B, and at 2-3. Soon afterward Mr. Chandler filed a slew of motions to amend or supplement his complaint. Only the first of those motions — along with the third, which appears to be an exact duplicate of the first — contains allegations related to Mr. Chandler's original claim. In addition, several documents related to that original claim are appended to the motion. Taken together, those documents and Mr. Chandler's statements may be read to allege that Dr. Brodie conducted a "Psychosexual Risk Assessment" of Mr. Chandler. 1st Mot. Am., Attachment 3 (marked as Exhibit C). Based on that assessment, Mr. Chandler's parole officer recommended to the United States Parole Commission on December 20, 2005, that Mr. Chandler be "placed under supervision with the Sex Offender Unit for a more comprehensive focus and placed on GPS monitoring." Id., Attachment 1 (marked as Exhibit A). Mr. Chandler, told that his parole would be subject to revocation if he did not consent to the change in his conditions of parole, signed a form indicating that he waived the right to "object or comment to the Commission" and agreed to the modification. See id.; Compl. at 2.

On January 18, 2006, the Parole Commission ordered that Mr. Chandler "be subject to the Special Sex Offender Aftercare Condition," and that he "participate in an in-patient or out-patient mental health program . . . , with special emphasis on long-term sex offender testing and treatment." 1st Mot. Am., Attachment 2 (marked as Exhibit C). Mr. Chandler was further instructed: "You are expected to acknowledge your need for treatment and to participate

in good faith in achieving the program goals that will be established for you." <u>Id</u>.  He would "be subject to the Global Positioning Systems monitoring inclusive of a curfew and/or exclusion zones." <u>Id</u>.

        After the issuance of the Parole Commission's order of January 18, 2006, Mr. Chandler was required to sign a document entitled a "Treatment Contract & Attendance Policy." <u>See</u> 1st Mot. Am., Attachment 4 (marked as Exhibit A).  The treatment contract, by its own description, "outlines the expectations for participating and the potentional consequences of not appropriately participating in Phase 1 of the sex offender treatment program at the Center for Clinical and Forensic Services, Inc." <u>Id</u>. at 1.  According to the contract, in order to avoid expulsion from the treatment program and possible parole revocation, Mr. Chandler would be required to, among other things, waive his right to doctor-patient confidentiality, <u>id</u>. ¶ 2; "discuss[ his] crime of conviction and [his] sexual history," <u>id</u>. ¶ 4; "pass[] . . . offense specific and/or sexual history polygraphs on these areas," <u>id</u>.; avoid "look[ing] at sexually explicit material or 'erotica' in magazines, videos, or on the Internet," <u>id</u>. ¶ 7; and attend all treatment sessions, with limited exceptions.  <u>Id</u>. ¶¶ 12-13.

        Mr. Chandler protested when told that he would be required to sign the treatment contract, even going so far as to write a letter of protest to one of the parole commissioners.  <u>See</u> 1st Mot. Am., Ex. 3 (marked as Exhibit C).  He was told in response, in a letter from a hearing examiner dated February 1, 2006, that it was "necessary" for him to "comply with all conditions of [his] release," including "the special sex offender aftercare condition," which had been imposed "as a precautionary measure."  <u>Id</u>.

Based on this set of allegations, Mr. Chandler seeks to add as defendants the United States Parole Commission and the Center for Clinical and and Forensic Services, Inc., the institution that runs the sex offender treatment program in which Mr. Chandler was ordered to take part.  See 1st Mot. Am. at 2; id., Attachment 4 (labeled Exhibit A).  He also seeks to amend his complaint to include a claim for violation of his "Freedom of Choice under the First Amendment," and specifies that his Fifth Amendment claims consist of allegations of violations of his due process rights and of his right against self-incrimination.  1st Mot. Am. at 6.

### C.  Additional Motions to Supplement the Complaint

Mr. Chandler's numerous subsequent motions to amend or supplement his complaint concern events that are largely unrelated to his placement in sex offender treatment. He asks leave to amend his complaint to allege that:

> (1) His community supervision officer Gregory Campos is liable for "harassment,"  "false accusation," and "deformation of character" because he claimed in April 2006 that Mr. Chandler was taking drugs after Mr. Chandler failed to take a scheduled drug test, 2d Mot. Am. at 3-4;

> (2) Mr. Campos called Mr. Chandler's then-employer in April 2006 and informed the employer that he was Mr. Chandler's parole officer and that Mr. Chandler would need to leave work at a certain time to meet with Mr. Campos.  This was an actionable "invasion of privacy" according to Mr. Chandler.  2d Mot. Am. at 4-5;

> (3) Two parole officers and a GPS technician wrongly accused Mr. Chandler of removing his GPS tracking device in May 2006.  In doing so, they became liable for "false accusation," "harassment," "conspiracy," and "threatening behavior."  4th Mot. Am. at 2;

> (4) A Deputy United States Marshal refused to permit Mr. Chandler to enter the offices of the Public Defender Service for the District of Columbia when Mr. Chandler went there in August 2006 "[t]o serve the General Counsel for CSOSA with a copy of a

Motion that I was filing in the D.C. Superior Court." This was
allegedly a violation of Mr. Chandler's "Constitutional Right to
unobstructed Legal Representation . . . Under the First
Amendment." 5th Mot. Am. at 4;

(5)  At a parole revocation hearing held with respect to Mr.
Chandler on October 30, 2006, a parole examiner considered
evidence that had not previously been disclosed to Mr. Chandler or
his legal counsel. 7th Mot. Am. at 3.  The examiner relied upon
this evidence in recommending that Mr. Chandler's parole be
revoked. Id.  Mr. Chandler asserts that the examiner, the chairman
of the Parole Commission, and a Commission case analyst are as a
result liable for violation of Mr. Chandler's due process rights. Id.;
and

(6)  After Mr. Chandler's parole was revoked in 2006, the Bureau
of Prisons raised his "Custody Point Score" from zero to nineteen.
6th Mot. Am. at 3.  This constituted the "tort of enhancement." Id.

On August 20, 2007, less than a month after Mr. Chandler filed his seventh

motion to amend or supplement his complaint, the Court ordered an end to the tide of filings

coming from the plaintiff, ordering that all further filings would be stayed until the two

dispositive motions then pending had been decided.  See Chandler v. James, Civil Action No.

06-664, Order at 2 (D.D.C. Aug. 20, 2007).  In flagrant violation of that Order, Mr. Chandler

proceeded to file nine additional motions, including several motions to amend or supplement his

complaint.


## II.  MOTIONS FILED IN VIOLATION OF COURT ORDER

In the time since the Court ordered that further filings be stayed on August 20,

2007, Mr. Chandler has filed three motions to amend or supplement his complaint; one motion

"to produce evidence" that is in effect an attempt to allege that he has exhausted possible

administrative remedies for his tort claims; a motion for summary judgment; two motions for

judgment on the pleadings; a motion for a stay; and a motion to lift any stay.  This string of frivolous motions results in precisely the sort of "clogging" of the Court's docket that the August 20, 2007 Order was meant to prevent.  <u>Chandler v. James</u>, Civil Action No. 06-664, Order at 2 (D.D.C. Aug. 20, 2007).  Because Mr. Chandler filed those motions in blatant disregard of the Court's Order, the Court, exercising its "inherent authority . . . to protect [its] institutional integrity and to guard against abuses of the judicial process," will deny the motions summarily. <u>Ali v. Tolbert</u>, No. 09-7095, 2011 WL 691364, at *5 (D.C. Cir. Mar. 1, 2011) (citation and internal quotation marks omitted).

### III.  MOTIONS TO AMEND OR SUPPLEMENT THE COMPLAINT

Of those motions seeking to amend or supplement the complaint that were filed prior to August 20, 2007, only one concerns the sex offender aftercare condition that forms the basis of the original complaint.  <u>See</u> 1st Mot. Am.[2]  The remaining motions, because they seek to add to the complaint allegations concerning events that occurred after the initiation of this lawsuit, are more accurately termed motions to supplement the complaint rather than to amend it. <u>See</u> Fed. R. Civ. P. 15(d) (providing for the filing of "supplemental pleading[s] setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented"); 6A CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE § 1504 (3d ed. 2010) (amended pleadings "relate to matters that occurred prior to the filing of the original pleading and entirely replace the earlier pleading";

---

[2]    Technically, two of Mr. Chandler's motions to amend the complaint — the first and third — concern the facts alleged in the original complaint, but since those two motions are exactly the same, the Court will consider just one on its merits and deny the other as moot.  <u>See</u> 1st Mot. Am.; 3d Mot. Am.

supplemental pleadings "deal with events subsequent to the pleading to be altered and represent additions to or continuations of the earlier pleadings"). All of those motions will be denied; all but one will be denied with prejudice.

Although leave to supplement a complaint pursuant to Rule 15(d) of the Federal Rules of Civil Procedure is liberally granted, as is leave to amend a complaint pursuant to Rule 15(a), see 6A CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE § 1510, such leave is properly denied where the "'matters alleged in a supplemental pleading have no relation to the claim originally set forth and joinder will not promote judicial economy or the speedy disposition of the dispute between the parties.'" Chandler v. District of Columbia, 578 F. Supp. 2d 73, 79 (D.D.C. 2008) (quoting 6A CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE § 1506 (2d ed. 1990)). In particular, supplemental, unrelated claims against new defendants are inappropriate; "[u]nrelated claims against different defendants belong in different suits," especially when those claims are made by a litigant, such as Mr. Chandler, who is barred by the Prison Litigation Reform Act from filing new complaints without prepayment of fees during his periods of incarceration. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007).

All of Mr. Chandler's proposed supplemental claims concern events unrelated to those forming the basis of his original complaint. All, with one possible exception, are directed at defendants with no connection to Mr. Chandler's original allegations. Whereas Mr. Chandler's operative complaint objects to the imposition of a sex offender aftercare condition upon him as part of his parole, and thus may be most properly addressed to defendants who are decision-making officials on the United States Parole Commission, almost all of his proposed

supplemental pleadings concern entirely different incidents and defendants.  See 2d Mot. Am. at

3-4 (accusing Mr. Chandler's community supervision officer, Gregory Campos, of falsely

claiming that Mr. Chandler had violated the terms of his parole by taking drugs); id. (alleging

that Mr. Campos violated Mr. Chandler's privacy by informing Mr. Chandler's employer that he

was Mr. Chandler's parole officer); 4th Mot. Am. at 2 (alleging that two parole officers and a

GPS technician —  Matthew Kiely, Gregory Campos, and D. Johnson— are liable for falsely

claiming that Mr. Chandler had removed his GPS device); 5th Mot. Am. at 4 (seeking to add an

employee of the United States Marshals Service as a defendant because that individual blocked

Mr. Chandler's entrance to the offices of the Public Defender Service); 6th Mot. Am. at 3

(alleging that the Bureau of Prisons had acted tortiously in enhancing Mr. Chandler's "Custody

Point Score").

   The only one of Mr. Chandler's proposed supplemental pleadings that can be

construed to share a defendant in common with Mr. Chandler's original claim is the seventh,

which asserts that Mr. Chandler was deprived of due process at a parole revocation hearing.  See

7th Mot. Am. at 3.  Because that claim, like Mr. Chandler's claim regarding the sex offender

aftercare condition, is directed at official actions of the USPC, both claims, construed liberally as

is required in an action litigated by a *pro se* plaintiff, may be interpreted to name the individual

members of the Commission as defendants.  See Settles v. United States Parole Comm'n, 429

F.3d 1098, 1104 (D.C. Cir. 2005).  It is generally proper for claims against a common defendant

to be joined together in one proceeding.  See FED. R. CIV. P. 19(a).  Nevertheless, the Court will

not grant Mr. Chandler's seventh motion to supplement the complaint at this point, for two

reasons.  First, Mr. Chandler has not identified the form of relief he seeks from the Parole

11

Commission.  The viability of his proposed supplemental claim likely depends on the form of relief requested.  See, e.g., Nelson v. Williams, Civil Action No. 10-0245, 2010 WL 4501767, at *4 (D.D.C. Nov. 9, 2010).  Second, the federal defendants have not yet had an opportunity to respond to the plaintiff's seventh motion to supplement the complaint.  In light of those considerations, that motion will be denied without prejudice to its being refiled at a later date by Mr. Chandler's court-appointed counsel.  See infra at 18.

The remainder of the plaintiff's motions seeking to bring supplementary claims will be denied because they concern neither transactions nor defendants related to the original complaint.  They are also properly denied because the claims they seek to raise are frivolous. The many allegations of tortious activity made by Mr. Chandler fail to state a claim against the federal employees he seeks to join as defendants.  Under the Federal Tort Claims Act, the United States alone may be held liable for torts committed by federal employees, such as employees of the Courts Services and Offender Supervision Agency for the District of Columbia, in the scope of their employment.  See 28 U.S.C. § 2679(d).  The United States, however, has not waived sovereign immunity with respect to certain enumerated torts, see id. § 2680(h), or any claims that could not be brought against "a private individual under like circumstances."  See id. § 2674.

Mr. Chandler's claim that CSOSA employees are liable for "deformation of character," see 2d Mot. Am. at 3-4; 4th Mot. Am. at 2, thus is barred because the FTCA specifies that the United States shall bear no liability for "libel, slander, [or] misrepresentation."  Id. § 2680(h).  His claims of "harassment," "threatening behavior," "false accusation," and "malicious interference," see 2d Mot. Am. at 3-4; 4th Mot. Am. at 2; 5th Mot. Am. at 6, fail because those terms do not refer to any cause of action cognizable under District of Columbia

12

common law.  Nor is there any cause of action known as the "tort of enhancement."  6th Mot. Am. at 3.  Since these various purported tort claims are deficient, so too are any claims predicated upon "conspiracy."  See Murray v. Motorola, Inc., 982 A.2d 764, 771 (D.C. 2009) ("Civil conspiracy . . . is not an independent tort but only a means for establishing vicarious liability for an underlying tort." (citation and internal quotation marks omitted)).

Mr. Chandler's claim for "invasion of privacy" against Gregory Campos is also deficient.  A claim under the federal Privacy Act will not lie against an individual.  See Bavido v. Apfel, 215 F.3d 743, 747 (7th Cir. 2000); Mittleman v. United States Treasury, 773 F. Supp. 442, 450 (D.D.C. 1991).  Furthermore, Mr. Chandler has failed to allege facts that would support an invasion of privacy claim under District of Columbia common law.  Such a claim requires that, among other things, an allegation about the plaintiff be the subject of publicity.  See Bean v. Gutierrez, 980 A.2d 1090, 1095 (D.C. 2009).  Communicating such an allegation to "a single person," as Mr. Campos is claimed to have done, does not constitute "publicity."  Id.  The invasion of privacy claim therefore will be dismissed.

As for the constitutional claim proffered by Mr. Chandler in his fifth motion to supplement his complaint, none of his factual allegations suggest that he was ever denied access to counsel in connection with proceedings where such access was constitutionally required.  He therefore fails to state a claim for violation of his "Constitutional Right to unobstructed Legal Representation."  5th Mot. Am. at 4.  Because they are frivolous and propose no new claims that should be adjudicated in this litigation, Mr. Chandler's second, fourth, fifth, and sixth motions to supplement the pleadings will be denied.

Mr. Chandler's first motion to amend his complaint, in contrast, actually makes allegations related to his original claim and implicates a legal argument that might have some merit.  See infra at 17.  As a result, the Court will grant that motion.  Ordinarily, granting such a motion to amend the pleadings would render moot the federal defendants' motion to dismiss the complaint.  Mr. Chandler's motion to amend his complaint, however, does not seek to replace his prior pleading, but rather to expand upon it.  The Court therefore will treat the two documents as a single pleading, and construe the federal defendants' motion as one to dismiss the resulting amended complaint.

## IV.  MOTION TO DISMISS THE AMENDED COMPLAINT

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows dismissal of a complaint if a plaintiff fails "to state a claim upon which relief can be granted."  FED. R. CIV. P. 12(b)(6).  In Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), the Supreme Court noted that "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]'"  Id. at 544 (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)); see also Erickson v. Pardus, 551 U.S. 89, 93-94 (2007).  Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss, to provide the "grounds" of "entitle[ment] to relief," a plaintiff must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  Bell Atlantic Corp. v. Twombly, 550 U.S. at 555; see also Papasan v. Allain, 478 U.S. 265, 286 (1986).  While there is no "probability requirement at the pleading stage," Bell Atlantic Corp. v. Twombly, 550 U.S. at 556, "something beyond . . . mere possibility . . . must be alleged[.]"  Id. at 557.  The facts

14

alleged in the complaint "must be enough to raise a right to relief above the speculative level," id.

at 555, because Rule 8(a)(2) requires a "showing," rather than a "blanket assertion," of

entitlement to relief, id. at 555 n.3.  The complaint must be sufficient "to state a claim for relief

that is plausible on its face.  Id. at 570; see also Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).

On a motion to dismiss under Rule 12(b)(6), the Court "must accept as true all of

the factual allegations contained in the complaint."  Erickson v. Pardus, 551 U.S. at 94; see also

Bell Atlantic Corp. v. Twombly, 550 U.S. at 555.  The complaint "is construed liberally in the

[plaintiff's] favor, and [the Court should] grant [the plaintiff] the benefit of all inferences that can

be derived from the facts alleged."  Kowal v. MCI Commc'ns Corp., 16 F.3d 1271, 1276 (D.C.

Cir. 1994).  Nevertheless, the Court need not accept inferences drawn by the plaintiff if those

inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiff's

legal conclusions.  See id.; Browning v. Clinton, 292 F.3d 235, 242 (D.C. Cir. 2002).

As amended, Mr. Chandler's complaint asserts claims for libel, slander,

defamation, false accusation, harassment, conspiracy, coercion, intimidation, and violations of

his First, Fifth, and Eighth Amendment rights.  See Compl. at 1-2; 1st Mot. Am. at 4-5.  It names

as defendants CSOSA, Charles James, Linwood A. Williams, Dr. Phyllis Brodie, the Center for

Clinical and Forensic Services, and the United States Parole Commission.  The vast majority of

Mr. Chandler's claims are frivolous.  As explained above with respect to Mr. Chandler's motions

to supplement his complaint, see supra at 12, neither the United States, its agencies, or its

employees may be held liable for libel, slander, defamation or "false accusation" under the

circumstances described by Mr. Chandler.  Nor may they be held liable for non-existent torts

such as "intimidation" or "coercion."  Mr. Chandler's claims purporting to be based on common

law torts therefore will be dismisssed with respect to the federal defendants.  Mr. Chandler's

claims asserting "intimidation" and "coercion" against the Center for Clinical and Forensic Services will also be dismissed, as there are no such torts recognized under District of Columbia common law.

As for Mr. Chandler's constitutional claims, such claims may be brought against employees of the Parole Commission or of CSOSA under 42 U.S.C. § 1983.  See Settles v. United States Parole Comm'n, 429 F.3d at 1104; Fletcher v. District of Columbia, 370 F.3d 1223, 1227 (D.C. Cir. 2004), *vacated on other grounds*, 391 F.3d 250 (D.C. Cir. 2004).  Such claims may not be brought against the United States itself or against either the Commission or CSOSA.  See Settles v. United States Parole Comm'n, 429 F.3d at 1106.  Mr. Chandler's constitutional claims against those entities will be dismissed.

Mr. Chandler's claims based on the First and Eighth Amendment, as well as his claim that his Fifth Amendment privilege against self-incrimination has been violated, are also frivolous and will be dismissed.  Contrary to Mr. Chandler's apparent belief, he has no "Freedom of Choice" under the First Amendment that would protect his right to view pornography even while on parole.  See 1st Mot. Am. at 4.  Because Mr. Chandler nowhere alleges any facts suggesting that he has been compelled to divulge information that could be used against him in a criminal proceeding, he has failed to state a claim for violation of his Fifth Amendment privilege against self-incrimination.  Mr. Chandler's factual allegations also fail to state a claim for violation of the Eighth Amendment, which "protects prisoners from the 'wanton and unnecessary infliction of pain' and conditions that are 'grossly disproportionate to the severity of the crime warranting punishment.'"  Hurt v. Mental Health North Center, Civil Action No. 06-1468, 2007 WL 879171, at *1 n.1 (D.D.C. Mar. 21, 2007) (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)).

16

With those frivolous claims stripped away, Mr. Chandler's remaining claims consist of various common law tort claims against Dr. Phyllis Brodie, see Compl. at 1-2, and a Fifth Amendment procedural due process claim against Charles James and Linwood A. Williams.  See 1st Mot. Am. at 6.  Unlike Mr. Chandler's other claims, the due process claim cannot be easily dismissed.  Several courts, although none yet in this circuit, have found that a prisoner or parolee has a liberty interest in not being classified as a sex offender and required to undergo psychological treatment designed for sex offenders; consequently, before he can be so classified and ordered to submit to treatment, the prisoner/parolee must be afforded due process. See Renchenski v. Williams, 622 F.3d 315, 325-31 (3d Cir. 2010); Coleman v. Dretke, 409 F.3d 665, 668 (5th Cir. 2005); Kirby v. Siegelman, 195 F.3d 1285, 1287 (11th Cir. 1999).

Given the undeveloped state of the record and Mr. Chandler's lack of legal counsel, the Court is not prepared to determine at this point whether Mr. Chandler does in fact have a liberty interest in avoiding classification and treatment as a sex offender, nor can the Court say, if such an interest does exist, what process must be afforded before Mr. Chandler can be deprived of it.  The Court is certainly not prepared to rule on such a potentially complex issue as qualified immunity.  See MTD at 23.

Because of these uncertainties, the Section 1983 claims against defendants James and Williams for due process violations will not yet be dismissed.  There is some question, however, as to whether either Mr. James or Mr. Williams is properly named as a defendant with respect to those due process claims.  Based on the Court's review of the record, it appears that the sex offender aftercare condition was imposed by order of the Parole Commission, see 1st Mot. Am., Attachment 2 (marked as Exhibit C), not simply by the choice of either Mr. James or

Mr. Williams.  In that case, the individual members of the Parole Commission may be more appropriate defendants.

As the foregoing discussion suggests, the one potentially meritorious claim raised by Mr. Chandler is far too complex to be effectively prosecuted by a prisoner proceeding *pro se*, and the legal issues it presents are sufficiently novel that the Court declines to rule on them in the absence of any counsel for the plaintiff.  Consequently, the Court will appoint counsel for Mr. Chandler before this case proceeds further.

## V.  SERVICE ON INDIVIDUAL DEFENDANTS

The record does not show that Mr. Chandler has properly served Dr. Brodie, Mr. James, or Mr. Williams.  Indeed, Dr. Brodie has never responded to Mr. Chandler's complaint or any of his motions, suggesting that she may be unaware of the existence of this litigation.  Mr. Chandler therefore will be required either to demonstrate that he has effected proper service in the manner described by Rule 4 of the Federal Rules of Civil Procedure or Rule 4 of the Civil Rules of the Superior Court of the District of Columbia, or to show cause why his claims against Dr. Brodie, Mr. James, and Mr. Williams should not be dismissed for lack of service.

## VI.  SANCTIONS AND FURTHER PROCEEDINGS

Even after being explicitly instructed by this Court not to file further motions, Mr. Chandler has inundated the Court and the other parties to this case with a string of frivolous motions and other filings.  Reviewing these repetitive, confusing, and generally frivolous documents consumes the resources of the Court and slows the resolution of the dispute between the parties.  In order to preserve the integrity of these proceedings, the Court will bar Mr. Chandler himself — as opposed to his to-be-appointed counsel — from filing any further

documents in this case without leave of court.  There will be one sole exception to this bar: Mr.

Chandler may file a response to the Court's Order regarding service of process on the individual

defendants.  Any other documents filed by Mr. Chandler himself without leave will be stricken

from the record or summarily denied.

The Court will issue an Order appointing counsel for Mr. Chandler in due course.

## VII.  CONCLUSION

For the foregoing reasons, the Court will grant in part and deny in part the federal

defendants' motion to dismiss the complaint; grant Mr. Chandler's first motion to amend his

complaint; deny Mr. Chandler's seventh motion to amend his complaint without prejudice; and

deny all of Mr. Chandler's remaining motions with prejudice.   An Order consistent with this

Opinion shall issue this same day.

SO ORDERED.

/s/_____
PAUL L. FRIEDMAN
United States District Judge

DATE: May 4, 2011